## LEDBETTER et al. v. WESLEY et al.[*]

## McGEE et al. v. LEDBETTER et al.

Circuit Court of Appeals, Eighth Circuit. November 9, 1927.

Nos. 7765, 7766.

**1. Judgment ⊕562—Judgment, to be available as estoppel, must be on merits.**

A judgment, to be available as an estoppel, must be on the merits.

**2. Judgment ⊕572(1)—Judgment on demurrer is as conclusive as one on proof.**

A judgment on demurrer is as conclusive as one rendered on proof.

**3. Judgment ⊕572(2)—Judgment of dismissal sustaining general demurrer is presumed to be on merits, and renders issues res judicata.**

Judgment or decree of dismissal, without more, sustaining general demurrer, is presumed to be on merits, unless it is otherwise stated in decree of dismissal, and renders issues in case res judicata.

**4. Judgment ⊕572(2)—Decree sustaining general demurrer in action by government to cancel conveyances by Indians and dismissing bill, held to be on merits.**

Where government commenced action to cancel conveyances by Indians, and demurrer

was sustained on ground that allottees and patentees of lands involved were necessary parties, that there was defect of parties, and that bill was multifarious, and on appeal to Circuit Court of Appeals decree was reversed, and Supreme Court on appeal held that demurrer should be sustained on ground that bill was without equity, because conveyances were not executed in violation of restrictions on alienation, and thereafter District Court sustained demurrer and dismissed bill, without stating reasons, and no appeal was taken, such decree must be held to be decision on merits.

**5. Judgment ⊕540—Judgment on merits is absolute bar to subsequent action on same cause of action between same parties or their privies.**

Where second action or suit is on same cause of action, judgment or decree on merits in first case is absolute bar to subsequent action, or suit between same parties or those in privity with them, not only with respect to every matter which was actually offered and received to sustain demand, but also as to every ground of recovery which might have been presented.

**6. Judgment ⊕720—Where second case is on different cause of action, prior judgment in suit between same parties operates as estoppel only as to matters actually in issue.**

Where second case is on a different cause of action, prior judgment or decree on merits in suit between same parties operates as an estoppel only as to matters actually in issue or points controverted, on determination of which judgment or decree was rendered.

**7. Indians ⊕18—Heirs of deceased Choctaw Indian allottee had equitable interest, which, in absence of restrictions, they could convey before patent.**

Heirs of deceased Choctaw Indian allottee had equitable interest, which, in absence of restrictions, they could convey before patent was issued.

**8. Indians ⊕27(2)—United States may invoke equity jurisdiction of federal courts to determine whether restrictions on alienation of Indian allottees have been violated.**

United States is entitled to invoke the equity jurisdiction of federal courts to determine whether restrictions on alienation of Indian allottees have been violated.

**9. Judgment. ⊕743(2)—Decree in action by government to cancel deed by claimed heirs of Indian allottee held bar to attack in ejectment cases on deed by those signing it.**

Decree sustaining demurrer to government's action, under Act May 27, 1908 (35 Stat. 312), to set aside deed by claimed heirs of Choctaw Indian allottee and dismissing bill, *held* bar to attack in subsequent ejectment cases on deed of Indian allotment by those who signed it, since government had right to bring previous action to determine question of violations of restrictions, and there was substantial identity in the parties and their interests, and in rights asserted and result sought was the same, viz. setting aside deed to land in question and quieting title and establishing possession thereto.

*Rehearing denied January 14, 1928.
23 F.(2d)—6

**10. Judgment ☞690—Decree ·in action by government representing Indian grantors, to cancel conveyance, did not bar ejectment action by heirs of niece of allottee, not signing deed, to recover land conveyed.**

Decree dismissing bill in action by United States under Act May 27, 1908 (35 Stat. 312). representing Indian grantors whose conveyances it was seeking to cancel, to set aside conveyance by claimed heirs of Choctaw Indian allottee, *held* not a bar to subsequent ejectment action by heirs of niece of allottee, where niece had not signed deed, to recover land conveyed, since their rights had not been adjudicated, and evidence to support cause of action stated by government would not prove cause of action 'in favor of heirs of niece, and therefore there could be no res judicata as to her.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Action by W. A. Ledbetter and others against Elias Wesley, Jesse McGee and others, in which defendants filed cross-bill, and the United States ·intervened. From the decree, complainants and Jesse McGee and certain other defendants separately appeal. Affirmed.

W. A. Ledbetter, of Oklahoma City, Okl. (H. L. Stuart, R. R. Bell, and E. P. Ledbetter, all of Oklahoma City, Okl., H. A. Ledbetter, of Ardmore, Okl., and L. A. Ledbetter, of Idabel, Okl., on the brief), for appellants in No. 7765.

J. D. Lydick, Charles E. McPherren, Kittie C. Sturdevant, Irvin L. Wilson, and M. E. Jordan, all of Oklahoma City, Okl., for appellees in No. 7765.

Philos S. Jones, Asst. U. S. Atty., of Muskogee, Okl. (Frank Lee, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

M. E. Jordan and Charles E. McPherren, both of Oklahoma City, Okl. (J. D. Lydick, Irvin L. Wilson, and Kittie C. Sturdevant, all of Oklahoma City, Okl., on the brief), for appellants in No. 7766.

W..A. Ledbetter, of Oklahoma City, Okl. (H. L. Stuart, R. R. Bell, and E. P. Ledbetter, all of Oklahoma City, Okl., H. A. Ledbetter, of Ardmore, Okl., and L. A. Ledbetter, of Idabel, Okl., on the brief), for appellees in No. 7766.

Before KENYON, Circuit Judge and MOLYNEAUX, and JOHN B. SANBORN, District Judges.

KENYON, Circuit Judge. Two appeals are here involved. We consider both in this opinion. The facts are somewhat complicated, and relate to the allotment of Betty Wesley, a full-blood Choctaw Indian, roll No. 3391, who died October 10, 1903. On the 18th day of December, 1903, Elias Wesley, Austin McGee, Jesse McGee, and Lizzie Thomas, purporting to be all the heirs of Betty Wesley, deceased, executed conveyances to W. A. Ledbetter and J. F. McClatchy and their heirs of the southeast quarter of section 32, township 4 south, range 2 west, in Carter county, Oklahoma, the same being a portion· of the land selected and filed on by J. C. Smith, administrator of the estate of .Betty Wesley, as her allotment. Selin McGee, who it is claimed was a niece of Betty Wesley, did not sign said deed. She intermarried with Quitman Jones, and is known in this record as Selin Jones. She died on the 16th day of February, 1918, leaving as her heirs Quitman Jones (her husband), Preman Jones, Lucy Jones, and Levy Jones, her minor children.

In July, 1908, the United States commenced an action in the then Circuit Court of the United States for the Eastern District of Oklahoma against E. B. Henshaw and others, which was entitled, "In Equity, No. 327." This action by the government was in a general way for the purpose of canceling a large number of conveyances by members of the Five Civilized Tribes of lands allotted to them; it being the theory of the government that the lands involved were restricted against alienation by the acts of Congress, and that the conveyances attacked had been executed in violation of said restrictions. The deed by Elias Wesley, Austin McGee, Jesse McGee, and Lizzie Thomas to Ledbetter and McClatchy was one of the.transactions involved in the government's suit. A demurrer was filed to the government's complaint by Ledbetter, McClatchy et al., defendants, challenging the jurisdiction of the court, alleging that the bill failed to show such interest in the complainant as would entitle it to maintain the suit, that complainant had no capacity to maintain the same, that it was wholly devoid of equity, that there was a defect of parties .and misjoinder, that the bill was multifarious, and that it did not disclose such.a state of facts as would entitle complainant to recover. September 13, 1909, the United States Circuit Court for the Eastern District of Oklahoma sustained said demurrer. United States v. Allen et al., 171 F. 907. That court entered a decree as follows:

"On this 13th day of September, 1909, on consideration of the demurrers to this bill filed by the various defendants hereto, which were heretofore argued and submitted and by the court taken under advisement, the court now finds that the complainant has not such an interest in the matters involved

in this cause as entitled it to maintain this action; that the various allottees and patentees of the lands involved in this action are necessary parties thereto, and that there is, therefore, a defect of parties; and that the bill is multifarious. It is the judgment of the court that for the foregoing reasons the demurrers should be sustained. It is therefore ordered that the demurrers herein, now being considered, be sustained, and the bill dismissed, at the complainant's costs."

An appeal was taken to this court, where the action of the trial court was reversed, and the case was remanded, with directions to proceed in accordance with the views expressed by this court. United States v. Allen et al., 179 F. 13. Appeal was taken to the Supreme Court of the United States by some of the parties interested to test the correctness of the decision of this court. That court grouped in a number of decisions the questions as to the various tribes—Heckman v. United States, 224 U. S. 413, 32 S. Ct. 424, 56 L. Ed. 820, dealing with the conveyances of allotted lands made by members of the Cherokee Nation; Mullen v. United States, 224 U. S. 448, 32 S. Ct. 494, 56 L. Ed. 834, with the questions as to conveyances by the Choctaw Indians; Goat v. United States, 224 U. S. 458, 32 S. Ct. 544, 56 L. Ed. 841, with questions as to the Seminole Indians.

In the Mullen Case the Supreme Court, after reviewing the treaties and statutes with regard to the allotment of land to the Choctaws and the restrictions of alienation, announced its conclusion as follows: "We are therefore of the opinion that the bill is without equity as against the appellants for the reason that the conveyances were not executed in violation of any restrictions imposed by Congress, and that the demurrer should have been sustained upon this ground. It follows that, with respect to the appellants, the decree of the Circuit Court of Appeals must be reversed and that of the Circuit Court affirmed." The government's case remained in the Circuit or District Court after the reversal by this court, without any action thereon until after the decision in the Mullen Case. Some months thereafter the District Court of the United States for the Eastern District of Oklahoma, successor to the Circuit Court, sustained the demurrer and entered an order of dismissal as follows:

"On this, the 9th day of December 1912, came on to be heard the demurrer of the defendants, W. A. Ledbetter, J. F. McClatchy, W. B. Jansen, L. Fountain, W. L. Reed, Arthur Sinclair, Chas. F. Burden, C. S. Maupin, George Terry, H. R. Adams, Chas. P. Lynch, V. Bronough, Betsy Folota, James and Eliza Alexander, Albert Click, The Roff Development Co., W. E. Caldwell, D. B. Lester, C. M. Joiner and J. B. Moore, W. H. Rickey, C. J. Ralston, and J. W. Hoffman to the bill of complaint herein, and after having heard the same, and being fully advised, it is considered, adjudged, and decreed that the demurrer be sustained and the bill dismissed as to said defendants at pages listed above."

On March 5, 1926, Jesse McGee, Sallie McGee, Quitanan Jones, Preman Jones, Levi Jones, and Lucy Jones, full-blood Indians, commenced an action in ejectment in the District Court of the United States for the Eastern District of Oklahoma against the Continental Supply Company of St. Louis, Mo., for the purpose of recovering lot 14 of block 23 in the town of Wilson, Oklahoma, being a part of the southeast quarter of section 32, township 4 south, range 2 west, Carter county, Oklahoma. Plaintiffs in that action. were represented by their attorneys, J. D. Lydick, Charles E. McPherren, Irvin L. Wilson, and M. E. Jordan. On April 1, 1926, the same plaintiffs, represented by the same attorneys, commenced an action in ejectment in the district court of Carter county, Oklahoma, against several hundred defendants, for the purpose of recovering all the southeast quarter of section 32, township 4 south, range 2 west, Carter county, Oklahoma, with the exception of said lot 14 of block 23 in the town of Wilson, which town had grown up and developed upon said land; this land being part of the allotment to Betty Wesley.

March 10, 1926, Elias Wesley, Jesse McGee, Sallie McGee, and Quitman Jones et al., made a deed of said southeast quarter of section 32, township 4 south, range 2 west, to Charles E. McPherren, one of the parties here, and also counsel, for the sum of $500 and other good and valuable consideration. Some arrangement as to the consideration, approved by the county judge of Pushmataha county, Oklahoma, was made with relation to McPherren's interest in the real estate for the use and benefit of Lydick, McPherren, and Wilson.

The present action was commenced April 7, 1926, in the United States District Court for the Eastern District of Oklahoma, by W. A. Ledbetter et al., complainants, against J. D. Lydick, Charles E. McPherren, Irvin L. Wilson et al. (a supplemental bill also being later filed, viz. April 15, 1926), seeking injunctive relief against the prosecution of the two ejectment actions before referred to. An answer and cross-bill were filed by defendants, and the United States inter-

vened and filed plea on behalf of the heirs of Selin Jones. The United States District Court held the action could be maintained as ancillary to equity cause No. 327, before referred to, styled "United States of America, Complainant, v. E. B. Henshaw et al., Defendants," which had theretofore been determined upon demurrer in the District Court of the United States for the Eastern District of Oklahoma, the general theory of the action brought April 7, 1926, being that in said equity cause No. 327 the United States represented all the heirs of Betty Wesley and all members of the Choctaw Tribe, and not merely those who signed the deed; that the purpose of the action of the government was the cancellation of the deed to Ledbetter and McClatchy of December 18, 1903, and to oust Ledbetter and McClatchy and their grantees from possession of the land so conveyed—i. e., the allotment of Betty Wesley—and to restore it to the Indian owners and to set aside all other deeds, contracts, powers of attorney, or other instruments affecting the title of the land; that the judgment in said cause, sustaining the demurrer and dismissing the case, was res adjudicata of the issues involved in the ejectment suits.

It is the theory of the heirs of Selin Jones that the suit of the government related to and affected only those who signed the deed to Ledbetter et al.; that the United States represented only the Indian grantors whose conveyances it sought to cancel; that Selin Jones and her heirs have never had a day in court; and that the judgment in equity cause No. 327 cannot be res adjudicata as to them. The trial court held "that the decree in equity cause No. 327 is res adjudicata and constitutes a bar in favor of said W. A. Ledbetter and J. F. McClatchy, and all of the plaintiffs herein holding under deeds and conveyances executed by the said W. A. Ledbetter and J. F. McClatchy, and their grantees, in and to the above described tract of land, as against Elias Wesley, Austin McGee, Jesse McGee, Lizzie Thomas, Licksey McGee, and the said Charles E. McPherren, J. D. Lydick, Irvin L. Wilson, and M. E. Jordan, in so far as the said McPherren, Lydick, Wilson, and Jordan claim under the said Wesley, Austin, Jesse McGee, Lizzie Thomas, and Licksey McGee, and all other persons holding by or through deeds, contracts, or other conveyances executed by them; but the court holds as a matter of law that said decree in said equity cause No. 327 is not a bar or res adjudicata as against the said Quitman Jones, Freeman Jones, Lucy Jones, and Levy Jones in their claim as heirs of the said Betty Wesley, and

to own an undivided interest in and to the above described tract of land and whose ancestor was not a party to said deed in said equity cause No. 327."

Ledbetter et al. appeal from that part of the decree holding that the decree in equity cause No. 327 is not res adjudicata as against the claims of Quitman Jones, Preman Jones, Lucy Jones, and Levi Jones, heirs of Selin Jones. That appeal is No. 7765 in this court, and will be herein designated by that number. Jesse McGee, Sallie McGee, Elias Wesley, J. D. Lydick, Charles E. McPherren, Irvin L. Wilson, and M. E. Jordan appeal from that part of the court's decree holding that the judgment in equity cause No. 327 is a bar in favor of Ledbetter et al. against the claim of Elias Wesley, Austin McGee, Jesse McGee, Lizzie Thomas, and Licksey McGee (wife of Jesse McGee) in the ejectment suits. This appeal is No. 7766, and will so be designated in this opinion.

We follow the procedure of the trial court in considering this case as ancillary to equity cause No. 327, its purpose being to preserve the integrity of the judgment therein rendered. Appellants in No. 7766, which we first consider, insist that the judgment in equity cause No. 327 was not a final judgment on the merits, and consequently no bar to the prosecution of the ejectment actions brought by the appellants in the federal and state courts.

[1, 2] It is well settled that a judgment to be available as an estoppel must be on the merits. Sutton et al. v. Wentworth (C. C. A.) 247 F. 493; Hughes v. United States, 4 Wall. 232, 18 L. Ed. 303; Gould v. Evansville & Crawfordsville R. R. Co., 91 U. S. 526, 23 L. Ed. 416; Swift v. McPherson, 232 U. S. 51; 34 S. Ct. 239, 58 L. Ed. 499; United States v. Moser, 266 U. S. 236, 241, 45 S. Ct. 66, 69 L. Ed. 262. Likewise that a judgment upon demurrer is as conclusive as one rendered upon proof. Durant v. Essex Company, 7 Wall. 107, 19 L. Ed. 154; Alley v. Nott, 111 U. S. 472, 4 S. Ct. 495, 28 L. Ed. 491; Northern Pacific Railway Co. v. Slaght, 205 U. S. 122, 27 S. Ct. 442, 51 L. Ed. 738.

[3] While a dismissal for want of parties does not go to the merits of a suit and does not render the subject of controversy res adjudicata (St. Romes v. Levee Steam Cotton Press Company, 127 U. S. 614, 8 S. Ct. 1335, 32 L. Ed. 289), judgment or decree of dismissal without more, sustaining a general demurrer, is presumed to be on the merits, unless it is otherwise stated in the decree of dismissal, and renders the issues in the case res adjudicata (Indian Land & Trust

Co. v. Shoenfelt et al. [C. C. A.] 135 F. 484; Fowler v. Osgood [C. C. A.] 141 F. 20, 4 L. R. A. [N. S.] 824; Hickey v. Johnson et al. [C. C. A.] 9 F.[2d] 498; Baker v. Cummings, 181 U. S. 117, 21 S. Ct. 578, 45 L. Ed. 776).

This court in Fowler v. Osgood, 141 F. 20, 24 (4 L. R. A. [N. S.] 824), has stated the rule as follows: "The demurrer for the reasons above stated was properly sustained. But the demurrer challenged the bill on nine other grounds, some of which went to the merits of the cause of action, and the decree is a general dismissal of the bill without any statement of the reason for it. A general judgment or decree of dismissal, without more, renders all the issues in the case res adjudicata and constitutes a bar to any subsequent suit for the same cause of action. Hence, when a court dismisses a suit upon some ground which does not go to the merits of the cause of action, but leaves them open to consideration in another court, or at another time, or in another way, the decree of dismissal must expressly adjudge that it is rendered for the specific reason upon which it is based, or must expressly provide that it is made without prejudice."

In the recent case of Hickey v. Johnson et al., 9 F.(2d) 498, this court held that a decree sustaining a demurrer and entering a judgment dismissing the bill of complaint is presumed to be a judgment on the merits. We do not understand the opinion in Hickey v. Johnson, supra, goes to the extent of holding, where the demurrer is sustained without specifying the grounds therefor, that if it clearly appear from the record that it is not on the merits, it will nevertheless be a bar in a succeeding case between the same parties on the same cause of action. The court refers to two leading cases on the subject, Northern Pacific Railway Company v. Slaght, 205 U. S. 122, 27 S. Ct. 442, 51 L. Ed. 738, and City of North Muskegon v. Clark (C. C. A.) 62 F. 694, and points out that "in both these cases the court had in mind a decision on demurrer from which it clearly appeared that the failure of plaintiff was due to the omission of an essential allegation and not to a determination of the merits." In Hickey v. Johnson et al., supra, the merits were involved in sustaining the demurrer.

[4] We do not think it clear from the record that the last decision on the demurrer was not on the merits. Judge Campbell originally sustained the demurrer to the government's complaint on three grounds: (a) That the various allottees and patentees of the lands

involved in the action were necessary parties thereto; (b) that there was a defect of parties; (c) that the bill was multifarious. Upon appeal to this court the decree was reversed, and upon appeal to the Supreme Court by some of the parties interested for the purpose of testing the ruling of this court it was held in the Mullen Case that a demurrer should be sustained to the bill as to the Choctaw Indians on the ground that it was without equity, for the reason that the conveyances were not executed in violation of any restrictions upon alienation. Reference to Judge Campbell's decision in 1909, sustaining the demurrer, sheds little light on the reason for sustaining the demurrer in 1912. After the Supreme Court had determined in the Mullen Case the applicable law, it would be presumed that the District Court would follow the law as laid down by the Supreme Court of the United States. Yet other reasons than the one suggested by the Supreme Court may have been in the mind of the District Judge. No attempt was made to amend the pleadings. No appeal was taken from the decision of the District Court. Its judgment sustaining the demurrer and entering a general order of dismissal ended the case.

In view of the decision of this court in Hickey v. Johnson, supra, and in Fowler v. Osgood, supra, the general decree of dismissal in equity cause No. 327 must be held to be a decision on the merits, unless we are to overrule the doctrine of these cases, as counsel for appellants strongly urge. The argument of appellants' counsel that these cases were erroneously decided, and should be overruled, is practically a concession that, unless so overruled, they are fatal to their claim that the decision on demurrer did not go to the merits. There is little to appeal to a court of equity in the suggestion to review and set aside the doctrine of these two well-considered cases in order to assist these highly speculative cases, brought 22 years after the deed sought to be set aside was made, and where an entire town had been built up on the land covered thereby, the successful termination of which suits would upset titles to hundreds of pieces of property improved at great expense by those who undoubtedly relied in good faith upon the soundness of their titles.

Appellants urge that, even if the judgment in equity cause No. 327 was a final judgment on the merits, the cause of action therein is not identical with that in the ejectment suits; hence that such judgment cannot be res adjudicata. In an able and ingenious argument special emphasis is placed on the

proposition that the United States, in view of the decision in the Mullen Case, had no capacity to sue on behalf of the full-blood Indian heirs, and therefore no question could have been determined in the case. Equity cause No. 327 was brought under authority of the Act of May 27, 1908 (35 Stat. c. 199). Its purpose was to recover back for the Indians, or their heirs, the titles which had been attempted to be conveyed. There is no question of bad faith on the part of the government in bringing the same. The conveyance of December 18, 1903, to W. A. Ledbetter and J. F. McClatchy, of the allotment of Betty Wesley by Elias Wesley, Austin McGee, Jesse McGee, and Lizzie Thomas, claiming to be the sole heirs of Betty Wesley, was therein challenged.

[5, 6] The general principles applicable to the doctrine of res judicata are well understood. The difficulty ofttimes arises in their application. In United States v. Moser, 266 U. S. 236, 241, 45 S. Ct. 66, 67 (69 L. Ed. 262), they are stated as follows: "The scope of their application depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand or upon a different claim or demand. In the former case a judgment upon the merits constitutes an absolute bar to the subsequent action. In the latter case the inquiry is whether the point or question presented for determination in the subsequent action is the same as that litigated and determined in the original action." Likewise, in Baltimore Steamship Company et al. v. Phillips, 274 U. S. 316, 319, 47 S. Ct. 600, 602 (71 L. Ed. 1069), "The effect of a judgment or decree as res judicata depends upon whether the second action or suit is upon the same or a different cause of action. If upon the same cause of action, the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties or those in privity with them, not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented. But if the second case be upon a different cause of action, the prior judgment or decree operates as an estoppel only as to matters actually in issue or points controverted, upon the determination of which the judgment or decree was rendered." Fitch v. Stanton Tp. et al. (C. C. A.) 190 F. 310; United States v. California & Or. Land Co., 192 U. S. 355, 24 S. Ct. 266, 48 L. Ed. 476.

The government's bill in equity cause No. 327 was based on the theory that the deed in question violated restrictions against alienation, in that it was made without the approval of the Secretary of the Interior. This provision, however, as to the approval by the Secretary of the Interior of conveyances by heirs of the full-blood, was not in existence when said deed was made. It was a part of the Act of April 26, 1906 (34 Stat. c. 1876), and its purpose evidently was to close the open season for securing conveyances from full-blood heirs of allottees of the Five Civilized Tribes. The issue as to said deed in the ejectment cases is that at the time of the execution thereof the lands were owned by the Choctaw Tribe of Indians in common and had not been allotted, and that the deed was invalid for the reason that the grantors had no alienable interest in the land. In the cross-complaint in this case appellants allege "that the sole and only issue raised and presented by said bill of complaint in said equity cause No. 327, in so far as the same affected the lands of Betty Wesley, deceased, was whether or not the instrument shown on page 19 of said bill of complaint was void by reason of having been executed prior to the issuance of the patent to the lands therein described."

[7] There is some question as to just when the selection of Betty Wesley's allotment was made. The deed to Ledbetter et al. states, "The same being a portion of the lands selected and filed on by J. C. Smith, administrator, as the allotment of the said Betty Wesley." Apparently the allotment had been selected prior to the deed, but the certificate was not issued until a short time thereafter, and the patent was not issued until 1908. However, there was an equitable interest which in the absence of restrictions the owner could convey. Mullen v. United States, 224 U. S. 448, 457, 32 S. Ct. 494, 56 L. Ed. 834. The ejectment actions therefore strike at the Ledbetter deed on account of alleged violations of restrictions on alienation, and the government's bill does likewise. The essential relief sought is the same; i. e., the setting aside of the deed of December 18, 1903, to Ledbetter et al. and obtaining the property back for the Indians who had signed it. There was identity in the thing sued for, in the cause of action, in the relief demanded and in the parties, provided the United States was authorized to represent the Indians who had signed said deed.

[8] That the United States is entitled to invoke the equity jurisdiction of the federal courts to determine whether restrictions upon alienation of Indian allotments have been violated is not debatable. West Side Irr. Co.

v. United States (C. C. A.) 246 F. 212; Central Nat. Bank of Tulsa, Okl., v. United States (C. C. A.) 283 F. 368, 372; Minnesota v. Hitchcock, 185 U. S. 373, 385, 22 S. Ct. 650, 46 L. Ed. 954; Marchie Tiger v. Western Investment Co., 221 U. S. 286, 31 S. Ct. 578, 55 L. Ed. 738; Heckman v. United States, 224 U. S. 413, 32 S. Ct. 424, 56 L. Ed. 820; Bowling & Miami Investment Co. v. United States, 233 U. S. 528, 34 S. Ct. 659, 58 L. Ed. 1080; La Motte et al. v. United States, 254 U. S. 570, 41 S. Ct. 204, 65 L. Ed. 410; Privett et al. v. United States et al., 256 U. S. 201, 41 S. Ct. 455, 65 L. Ed. 889.

The statutes contain many restrictions upon alienation of land of allottees and their heirs by members of the Five Civilized Tribes. Some relate to the alienation of the homestead allotment; others to what is known as surplus lands; others to full bloods; some to mixed bloods; some to transfer with approval of the Secretary of the Interior; others to transfers with approval of the probate court. The Act of May 27, 1908, provided that no conveyance of any interest of any full-blood Indian heir in the land of an allottee of the Five Civilized Tribes should be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee. That provision did not exist, however, at the time the deed in controversy was executed. Congress made a special appropriation in this act of $50,000 to be used by the Attorney General in payment of expenses of suits brought at the request of the Secretary of the Interior to recover back Indian lands in the Eastern judicial district of Oklahoma.

We refer to these various restrictions merely to point out that there was a complexity of confusion when the government brought equity cause No. 327 as to just what, if any, restrictions were applicable to deeds made by heirs' of allottees of the Five Civilized Tribes. Undoubtedly the Secretary of the Interior having charge of these matters and the law officers of the government believed there were restrictions violated in the alienation of such lands as those which had been allotted in the name of Betty Wesley after her death, as provided by 32 Stat. c. 1362, § 22, and so equity cause No. 327 was brought. The question involved was a justiciable one. Heckman v. United States, 224 U. S. 413, 32 S. Ct. 424, 56 L. Ed. 820.

In the government's complaint it pleaded: "Your orator further shows that all of the tracts of land hereinafter described are situated in the Eastern district of Oklahoma, was land of the Choctaw Tribe, and was at the time of the execution and recording of the deeds and other instruments of writing set forth in paragraph numbered six hereof, allotted lands of the Choctaw Tribe which had been inherited by full-blood Indians of said tribe, namely: The persons mentioned in paragraph 6, as granting or transferring the same." This allegation, which for the purpose of the demurrer must have been taken as true, proved fatal to the government's case, in view of the subsequent holding of the Supreme Court in Mullen v. United States, 224 U. S. 448, 32 S. Ct. 494, 56 L. Ed. 834.

If equity cause No. 327 had been tried out, instead of having been determined on demurrer, the same result would have been arrived at, as it would have appeared that the grantors in the Ledbetter deed were full-blood Indian heirs. That the determination was on demurrer makes the judgment no less effective, and that judgment settled the question that the transfer was not in violation of restrictions. If the government had no capacity to bring this case then it was not a proper party, and nothing could have been determined therein. The government was mistaken in its theory as to restrictions upon alienation, but that does not establish the fact that it had no capacity to bring the action. It is not similar to the situation presented in Murray v. Pocatello, 226 U. S. 318, 324, 33 S. Ct. 107, 108 (57 L. Ed. 239), where the court said, "Of course if the court was not empowered to grant the relief whatever the merits might be, it could not decide what the merits were," nor to House et al. v. Mullen, 89 U. S. (22 Wall.) 42, 22 L. Ed. 838, where the court held that, if a bill was dismissed for misjoinder of parties, it settled nothing, and concluded neither party upon the merits of the matter in controversy.

The leading case relied on by appellants is United States v. Waller, 243 U. S. 452, 37 S. Ct. 430, 61 L. Ed. 843. By what is known as the Clapp Amendment of 1906 and 1907 (34 Stat. 353, 1034) lands in the White Earth Reservation, allotted and patented in trust to an adult mixed-blood Indian, belonged to him, with rights and incidents of full ownership, including the right of alienation. An action was brought by the United States to set aside a certain deed on the ground that it was procured by fraud. It was held that the United States could not maintain such action, and the court uses the language that the United States was without capacity to bring the action for the benefit of the Indians named. See, also, Brader v. James, 246 U. S. 88, 94, 38 S. Ct. 285, 62 L. Ed. 591. The Waller Case was not an action based upon

violation of restrictions upon alienation. It was an action to set aside a deed because of fraud. With this the government had nothing whatever to do, as Congress had given to the mixed-blood Indians of the White Earth Reservation the right to dispose of the lands in question. Nor do we see that Bowling v. United States, 233 U. S. 528, 34 S. Ct. 659, 58 L. Ed. 1080 (also relied on), establishes the proposition contended for by appellant.

The government had authority to bring equity cause No. 327 to protect its wards, and the court had jurisdiction therein to determine all questions as to restrictions upon alienation. The judgment therein was an adjudication as to all restrictions pleaded, or which might have been pleaded and determined, in that case, and concludes the parties, as is said in United States v. California & Or. Land Co., 192 U. S. 355, 24 S. Ct. 266, 48 L. Ed. 476 (syllabus), "as to all media concludendi or grounds for asserting the right, known when the suit was brought." Bissell v. Spring Valley Township, 124 U. S. 225, 8 S. Ct. 495, 31 L. Ed. 411; Gunter v. Atlantic Coast Line, 200 U. S. 273, 26 S. Ct. 252, 50 L. Ed. 477; Northern Pacific Railway Co. v. Slaght, 205 U. S. 122, 27 S. Ct. 442, 51 L. Ed. 738.

[9] As we hold that the government had the right to bring equity cause No. 327 to determine the question of the violation of restrictions, and further that there is substantial identity in the parties and their interests and in the rights asserted, and as the result sought is the same, viz. setting aside the deed of December 18, 1903, to Ledbetter et al. by the claimed heirs of Betty Wesley to the land in question, and quieting title and establishing possession thereto, it follows that the judgment therein being on the merits, is a bar to the attack in the ejectment cases upon the deed of Betty Wesley's allotment by those who signed the same. Sapulpa Petroleum Co. et al. v. McCray (C. C. A.) 4 F.(2d) 645; Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; United Shoe Machinery Corporation et al. v. United States, 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708.

As to the heirs of Selin Jones, the case is quite different. The vital question there is whether or not the government in equity cause No. 327 represented these heirs. The object of that action, as is clear from a study of the allegations of the complaint, was to set aside a vast number of conveyances made by allottees of Indian lands and their heirs. The government was trying to protect weak and helpless Indians from the wiles of the superior white race, and rescue them from the clutch of speculators. The bill does contain statements tending to show that the United States attempted to represent members of the tribes, allottees and their heirs, but it represented them to cancel the deeds, contracts, powers of attorney, etc., affecting title to the lands. The Heckman Case, supra, relied on by appellants, holds that the Indian grantors, being represented by the government, were not necessary parties, and that the representation of the Indians by the government was complete. That is not a holding that the government represented all Indians, whether within the purview of the relief sought or not. The Supreme Court in the Heckman Case, page 445 (32 S. Ct. 434), said: "When the United States instituted this suit, it undertook to represent, and did represent, the Indian grantors whose conveyances it sought to cancel." All Indians of this class were represented by the government whether made parties or not. The government has designated in the bill, as interpreted by the Supreme Court, the Indians it represented, and those were the Indian grantors and their heirs whose conveyances it sought to have canceled, and none others. A study of the bill filed by the government convinces that such was its intention. We refer to some of the allegations thereof:

"Fourth. Your orator further shows that all of the tracts of land hereinafter described are situated in the Eastern district of Oklahoma, was land of the Choctaw Tribe, and was at the time of the *execution and recording of the deeds and other instruments of writing set forth in paragraph numbered 6 hereof,* allotted lands of the Choctaw Tribe which had been inherited by full-blood Indians of said tribe, namely: The persons mentioned in paragraph 6, as granting or transferring the same. * * *

"Fifth. Your orator further shows that each of the deeds, mortgages, leases, contracts of sale, powers of attorney, and other evidences of title to or incumbrances upon tracts of land as hereinafter set forth, was secured by defendants in defiant, willful and open violation of law, and of the duty which rested upon this nation and every member thereof, and for the purpose of unlawfully incumbering said lands allotted to members of the said Choctaw Tribe of Indians, all of whom, under the treaties and laws of the United States, were without power or authority to sell, alienate or incumber said lands in any manner whatsoever. And your orator further shows that by filing for record and causing to be recorded *the said deeds and*

*other instruments of writing,* each of the defendants herein named has unlawfully obtained for himself an apparent title or interest. * * *

"Sixth. And your orator further shows that *among said transactions were those hereinafter under this sixth heading set forth.* [The deed to Ledbetter et al. was one of those set forth in this paragraph.] * * *

"Seventh. Your orator further shows that it is informed and verily believes, and therefore charges the fact to be, that the defendants herein named and each of them has heretofore unlawfully secured from the members of said Choctaw Tribe of Indians other unlawful deeds, conveyances, mortgages, powers of attorney, and contracts, for and about said allotments, which the said Indians and freedmen had no authority to sell, alienate, dispose of, contract about, or incumber in any manner. * * *

"Eighth. And your orator further shows that, in addition to the instruments of writing hereinbefore mentioned and specified, upward of four thousand other instruments of writing, *of a nature similar to those hereinbefore set forth,* purporting to convey or to encumber or to affect the title of lands located within the Eastern judicial district of Oklahoma, and duly allotted to members of the Five Civilized Tribes, or belonging to said tribes, have been executed and placed on record by the defendants herein. * * *

"Ninth. * * * But that the court should order the *said several deeds and instruments of writing herein specified and described to be surrendered and delivered up for cancellation* and the record purged of the same; that the court should order the defendants to discover all facts relating to their possession other than those particularly mentioned conveyances, mortgages, powers of attorney, and contracts in their possession other than those particularly mentioned and described in this bill, in order that the same may be canceled. * * *

"Tenth. Your orator further shows that it has joined in this bill of complaint numerous defendants for the purpose of avoiding a multiplicity of suits to recover the possession of the said lands for the benefit of the said tribes and members thereof and for the purpose of avoiding multiplicity of suits to enjoin each of the several defendants herein from continuing to occupy the said lands and from taking any further deeds or other instruments of writing purporting to convey the title to said lands, and a multiplicity of suits *to have the deeds and instruments of writing which they have induced the said*

members *to make ordered surrendered and delivered up for cancellation and the record purged thereof.*"

The demands for relief also show that the purpose of said bill was to reach conveyances made in violation of restrictions:

"First: That this honorable court by its decree shall adjudge and declare that the said several *leases, deeds, instruments of conveyance and incumbrances described in paragraph numbered 6 of this bill,* to be void and of no effect as instruments of conveyance, and that the same be canceled and annulled and altogether held for naught and that the title to the lands therein described be held and decreed to be in the allottees or their heirs, subject to the terms, conditions and limitations contained in the treaties, agreements and laws of the United States." (Italics ours.)

It is alleged in paragraph 4 of the bill that "defendants were advised by the appearance of their grantors that they were such full-blood Indians." Certainly the appearance of grantors of said land would not advise the defendants of the appearance of those who were not grantors. The demurrer also recognizes the purpose of the bill. Paragraph 6 thereof refers to "each grantor named in the bill."

It is true the bill asks that rights to possession shall be declared to be in the Indians of the tribes, and that defendants should be ousted from possession. That is the only allegation that might in any way have affected Selin Jones or her heirs, but possession is incidental to the main relief, and we think the possession sought was possession for those who had made grants of their lands. Selin Jones had made no conveyance. She had violated no restrictions. The basis of the action brought by the United States was that the deed made by certain heirs of Betty Wesley to Ledbetter et al. was void by reason of the alleged fact that the lands sought to be conveyed were restricted lands. How could this affect any question as to Selin Jones' interest in the lands or the question of her heirship? Had the government succeeded in its action it would have left Selin Jones exactly where she was before the action started. Nothing would have been accomplished for her benefit unless possibly some incidental matter of possession, although it is doubtful if in that action her rights could in any wise have been determined as between herself and other heirs. Certainly there was no effort to bring about such result. The evidence to support the cause of action stated by the government in equity cause No. 327

would not prove a cause of action in favor of the heirs of Selin Jones, and, if not, there certainly could be no res adjudicata as to her. Harrison v. Remington Paper Co. (C. C. A.) 140 F. 385, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Water, Light & Gas Co. v. City of Hutchinson (C. C. A.) 160 F. 41, 19 L. R. A. (N. S.) 219; Privett et al. v. United States et al. (C. C. A.) 261 F. 351.

[10] The government was not attempting to represent any one in equity cause No. 327 except the Indian grantors whose conveyances it was seeking to cancel, and as Selin Jones or her heirs, as heirs of Betty Wesley, were not in that class they have not had their day in court, and their rights have been in no way adjudicated. The holding of the trial court that the decree in cause No. 327 was not a bar or res adjudicata as against Quitman Jones, Preman Jones, Lucy Jones, and Levi Jones to their claim as heirs of Betty Wesley to an undivided interest in the tract of land in question was correct.

We agree with the conclusion of the trial court as to the questions involved in both appeals, and its judgment and decree is affirmed.