## VINSON et al. v. GRAHAM et al.
### No. 275.

Circuit Court of Appeals, Tenth Circuit.
Oct. 22, 1930.

Chester I. Long and W. E. Stanley, both of Wichita, Kan. (A. W. Anderson, of Wewoka, Okl., Peter Q. Nyce, of Washington, D. C., Austin M. Cowan, of Witchita, Kan., Malcolm E. Rosser, of Muskogee, Okl., and Thos. H. Owen, of Oklahoma City, Okl., on the brief), for appellants.

G. J. Neuner and Elmer J. Lundy, both of Tulsa, Okl. (John H. Brennan and Thos. J. Casey, both of Tulsa, Okl., Foster V. Phipps, of Muskogee, Okl., Jack Paden, of Tahlequah, Okl., R. W. Stoutz and Poe, Lundy & Morgan, all of Tulsa, Okl., R. A. Hockensmith and R. R. Smith, both of Okmulgee, Okl., C. H. Jameson, of Tulsa, Okl., and Willmott & Looney, of Wewoka, Okl., on the brief), for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

Dorsey Fife brought this suit against the above named appellees to cancel certain instruments affecting the title to the east half of the northwest quarter of section 14, township 8 north, range 5 east, Seminole county, Oklahoma, less one acre in the northeast corner thereof, to establish his title thereto, to enjoin appellees from removing oil and gas therefrom, and to obtain an accounting for the oil and gas removed therefrom by appellees.

The original suit sought similar relief concerning two other tracts, not involved in this appeal. From a decree dismissing his petition as to the above described tract, Fife appealed. Thereafter Fife died and John H. Vinson, as administrator with the will annexed of the estate of Dorsey Fife, deceased, and Louis Fife, Phillip Fife, Annie A. Brown, née Fife, Clyde W. Brown, Della Fife, Betsey Fife and Chester I. Long, Trustee, as devisees, were substituted as appellants.

The name of Fife appears upon the approved rolls of the citizens of the Seminole Nation as follows: "No. 1077; Name, Fife, Dorsey; Age, 55; Sex, M.; Blood, Adop.; Year, 1897; Band, Okoske, Harjo; No. 239; Census Card No. 316."

On October 2, 1901, an allotment certifi-

cate was issued by the Seminole Nation to Fife conveying to him, as a part of his surplus allotment, the land here in controversy. On March 17, 1906, Fife executed and delivered to Thomas H. Smith a warranty deed to such land.

On January 2, 1909, the United States, in behalf of Fife and other members of the Seminole Nation, commenced an action in the United States District Court for the Eastern District of Oklahoma against Smith and others to cancel and set aside certain deeds, and to establish the title of such members to certain lands. Such suit was numbered 444, equity. The bill of complaint in that suit alleged the deed from Fife to Smith of March 17, 1906; that the lands described therein were allotted to Fife as a part of his surplus allotment, as an adopted citizen of the Seminole Tribe of Indians; and that, under the treaties with the Seminoles and the laws of the United States, Fife was not authorized to sell or alienate such land. On April 5, 1909, Smith and other defendants in No. 444 equity filed their joint and several demurrer to the bill of complaint setting up, among others, grounds of objection going to the merits. On December 9, 1912, the court entered its order sustaining such demurrer and dismissing such bill as to the defendant, Smith, and the deed of March 17, 1906. The order of dismissal was without reservation and contained no recitation of the grounds upon which the demurrer was sustained. Therefore, it must be considered as an order dismissing the bill upon the merits, as to Smith and the deed of March 17, 1906. Hickey v. Johnson (C. C. A. 8) 9 F.(2d) 498.

On May 6, 1918, Fife executed and delivered to Smith a warranty deed for such land.

In his bill of complaint in the instant case, Fife alleged that he had executed certain deeds affecting such tract of land; that, at the time of the execution of such deeds, he was a full blood restricted Indian, who was forbidden by acts of Congress to alienate or transfer such tract of land, and for such reason all such deeds made by him were null and void. By an amendment, Fife further alleged that, under the Curtis Act, approved June 28, 1898, 30 Stat. 495, the mineral rights in the Seminole lands were severed from the surface rights; that an allotment of lands under the Seminole agreement (Act July 1, 1898, 30 Stat. 567) did not convey to the allottee the equitable title to the mineral rights; that such mineral rights first vested in the allottees on July 1, 1908, by virtue of the

provisions of section 11 of the Act of May 27, 1908, 35 Stat. 312; that at the time of the execution of the deed of March 17, 1906, Fife owned only the surface estate in such tract of land; and that only the surface estate, if any, passed to Smith by virtue of such deed.

Appellees alleged title through mesne conveyances commencing with the Smith deed of March 17, 1906; alleged that the Barnsdall Oil Company and the Wolf Oil Company were the owners of oil and gas leases to such land; and alleged the decree in No. 444 equity as an estoppel under the doctrine of res judicata.

The trial court found that Fife was a three-quarter blood Indian, enrolled as an adopted Seminole. It concluded that Fife was barred from prosecuting the instant suit, in respect to the tract of land above described, by reason of the decree in No. 444 equity, under the doctrine of res adjudicata.

The Seminole agreement of December 16, 1897, 30 Stat. 567, provided that "all contracts for sale, disposition, or encumbrance of any part of any allotment made prior to date of patent shall be void."

The Act of April 21, 1904, 33 Stat. 189, 204, provided: "And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed." This limited the restrictions of the treaty, in respect to surplus allotments made to adults, to allottees of Indian blood.

Section 19 of the Act of April 26, 1906, 34 Stat. 137, 144, Thomas Annotated Acts of Congress, Five Civilized Tribes, page 245, provided:

"That no full-blood Indian of the * * * Seminole tribes shall have power to alienate, sell, dispose of, or encumber in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of this Act, unless such restriction shall, prior to the expiration of said period, be removed by Act of Congress; and for all purposes the quantum of Indian blood possessed by any member of said tribes shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior: * * * Provided further, That conveyances heretofore made by members of any of the Five Civilized Tribes subsequent to the selection of allotment and subsequent to removal of restriction, where patents thereafter issue, shall not be deemed or held invalid solely because said conveyances were

made prior to issuance and recording or delivery of patent or deed; but this shall not be held or construed as affecting the validity or invalidity of any such conveyance, except as hereinbefore provided; and every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby, declared void. * * *"

Section 1 of the Act of May 27, 1908, 35 Stat. 312, Thomas, Id., page 259, in part provides:

"That from and after sixty days from the date of this Act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

Counsel for appellants contend that the decree in No. 444 equity is not a bar to the relief sought in the instant case, under the doctrine of res adjudicata. They predicate this contention upon two principal propositions.

As their first proposition, counsel for appellants assert that a decree of a court cannot remove restrictions on alienation by an Indian, imposed by acts of Congress, or render valid a deed made in violation of such restrictions. In support of this proposition, they cite and rely upon Tidal Oil Co. v. Flanagan, 87 Okl. 231, 209 P. 729; Cotton v. McClendon, 128 Okl. 48, 261 P. 150; Bell v. Fitzpatrick, 53 Okl. 574, 157 P. 334; Crow v. Hardridge, 73 Okl. 136, 175 P. 115; Bilby v. Malone, 130 Okl. 217, 266 P. 760; Brink v. Canfield, 78 Okl. 189, 187 P. 223; and Goodrum v. Buffalo (C. C. A. 8) 162 F. 817.

In the first four of the cases cited above, it was held that each of the judgments, relied upon as an estoppel, had been rendered by a court which had no jurisdiction of the subject matter of the action, namely, the real property of a restricted Indian minor. The two Oklahoma cases last cited involved estates of Indian heirs and it was held that the court was without jurisdiction to enter the judgments relied on as an estoppel. However, the question here presented involves not the jurisdiction of the Oklahoma courts but the jurisdiction of the courts of the United States. Does a United States District Court for the proper district, in a suit brought by the United States (the defendant having been brought into court by proper process) have jurisdiction to determine whether a deed of an Indian allottee was made and delivered in violation of restrictions imposed by Congress? That such a question is a proper one for judicial inquiry and that a United States District Court for the proper district has jurisdiction in such a case is conclusively settled by an unbroken line of authorities. Heckman v. United States, 224 U. S. at pages 428–445, 32 S. Ct. 424, 56 L. Ed. 820; La Motte v. United States, 254 U. S. 570, 575, 41 S. Ct. 204, 65 L. Ed. 410; Mars v. McDougal (C. C. A. 10) 40 F.(2d) 247, 248; Ledbetter v. Wesley (C. C. A.) 23 F.(2d) 81, 86; Bowling v. United States, 233 U. S. 528, 534, 34 S. Ct. 659, 58 L. Ed. 1080; section 41, title 28, U. S. C. (28 USCA § 41). Such jurisdiction includes the power to determine the question presented erroneously as well as rightly. Ex parte Moran (C. C. A. 8) 144 F. 594; Jack v. Hood (C. C. A. 10) 39 F.(2d) 594. In applying the doctrine of estoppel by judgment, it is immaterial that the judgment which works it may have been erroneous, that the court may have been mistaken in the facts; may have misconceived the law, or may have disregarded the public policy of the nation when it rendered it, if the court had jurisdiction of the subject matter of, and the parties to, the action in which such judgment was rendered. Such a final judgment on the merits, in an action between the same parties or between those in privity with them upon the same claim or demand, is conclusive whether right or wrong, not only as to every matter offered in the former action but as to

every admissible matter which might have been offered to sustain the claim. Swift v. Jackson (C. C. A. 10) 37 F.(2d) 237, 240, 241.

In Goodrum v. Buffalo, supra, the judgment pleaded and relied upon had been entered in a special statutory proceeding predicated upon an affidavit, which omitted a material fact, jurisdictional in character. Such proceeding also rested upon a stipulation or contract, one of the parties to which was an Indian, who was non sui juris. It was "transparent on the face of the proceedings * * * resulting in the judgment relied upon * * * that it was not an honest proceeding."

The government had full authority to prosecute No. 444 equity in behalf of Fife [Heckman v. United States, 224 U. S. 413, 428, 444, 32 S. Ct. 424, 56 L. Ed. 820; Ledbetter v. Wesley (C. C. A.) 23 F.(2d) 81; Mars v. McDougal (C. C. A. 10) 40 F.(2d) 247] and the bill therein omitted no jurisdictional fact. Such suit was instituted and prosecuted by the United States, as guardian of Fife, and not by a non sui juris Indian. Whether, when the rolls of the Dawes Commission are silent as to the quantum of Indian blood of an allottee, such quantum of blood can be shown by proof aliunde of such rolls, and whether, if such proof establishes that the allottee was a three-quarter blood Indian, the lands allotted to him are within restrictions imposed by Congress, are justiciable questions; and a court in a proper case would have power to decide such questions. Therefore, if the United States had pleaded in behalf of Fife in No. 444 equity, in addition to the grounds therein set up, the grounds relied upon in the instant case and the court had erroneously decided in favor of Smith the issue as to the validity of the deed of March 17, 1906, the decree would not have been void for want of jurisdiction. The court would have had jurisdiction of the parties to and the subject matter of the suit and the mere erroneous decision would not have destroyed that jurisdiction. The decree, although erroneous, would have been valid. The court would have had jurisdiction, even if the alleging of such additional grounds in No. 444 equity would have rendered the bill multifarious, since the defect of multifariousness does not go to the jurisdiction of the court. Hefner v. Northwestern Life Insurance Co., 123 U. S. 747, 751, 8 S. Ct. 337, 31 L. Ed. 309. There is a manifest difference between a suit lacking in good faith, prosecuted by a non sui juris Indian, and an honest suit brought by the United States, as guardian of such Indian with full authority to act in the premises.

As their second proposition, counsel for appellants assert that No. 444 equity was a class suit, brought by the United States in behalf of several members of the Seminole Nation, and that only grounds of relief common to all such members could have been properly alleged therein; that the allegations of grounds for relief asserted in the instant suit, if asserted in No. 444 equity, would have rendered the bill therein multifarious; and that therefore the grounds for relief set up in this suit could not have been properly set up and adjudicated in No. 444 equity. Such proposition, asserted by counsel for the appellants, amounts to this: That an individual plaintiff, who has two grounds for cancellation of a deed, one common with a number of persons similarly situated and the other not, may join with such others in a general suit on the common ground and, if such general suit fails, he may then prosecute an individual suit on the ground available to him alone. In considering this contention, it is important for us to determine whether or not No. 444 equity, so far as Fife and the deed from Fife to Smith were concerned, and the instant case set up the same cause of action or separate and distinct causes of action.

Perhaps no definition of the phrase "cause of action" could be framed which would be entirely free from criticism. The courts and textbook writers have expressed divergent views in respect to the meaning of the phrase "cause of action," and the definitions which have been given have been generally subjected to criticism. See "The Code Cause of Action," Columbia Law Review, vol. 30, No. 6, June, 1930; 1 C. J., p. 935, § 28.

However, the definition which has met most frequently with judicial approval, and which seems to us to define most accurately the phrase "cause of action," is that given by Mr. Pomeroy in his treatise on Code Remedies. At section 347 of the fifth edition thereof, Mr. Pomeroy, in discussing this phrase, says:

"Every action is brought in order to obtain some particular result which we term the *remedy*, which the code calls 'relief,' and which, when granted, is summed up or embodied in the judgment of the court. This result is not the 'cause of action' as that term is used in the codes. It is true this final re-

sult, or rather the desire of obtaining it, is the primary motive which acts upon the will of the plaintiff and impels him to commence the proceeding, and in the metaphysical sense it can properly be called the cause of this action, but it is certainly not so in the legal sense of the phrase. This final result is the 'object of the action' as that term is frequently used in the codes and in modern legal terminology. It was shown in the introduction that every remedial right arises out of an antecedent primary right and corresponding duty and a delict or breach of such primary right and duty by the person on whom the duty rests. Every judicial action must therefore involve the following elements: a primary right possessed by the plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict, and finally the remedy or relief itself. Every action, however complicated or however simple, must contain these essential elements. Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term, and as it is used in the codes of the several States. They are the legal cause or foundation whence the right of action springs, this right of action being identical with the 'remedial right' as designated in my analysis. In accordance with the principles of pleading adopted in the new American system, the existence of a legal right in an abstract form is never alleged by the plaintiff; but, instead thereof, the facts from which that right arises are set forth, and the right itself is inferred therefrom. The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the facts from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act or wrong."

See, also, Casady v. Casady, 31 Utah, 394, 88 P. 32, 34; Veeder v. Baker, 83 N. Y. 156, 160; Goodrich v. Alfred, 72 Conn. 257, 43 A. 1041, 1042; Harvey v. Parkersburg Ins. Co., 37 W. Va. 272, 16 S. E. 580, 581; Drake v. Whaley, 35 S. C. 187, 190, 14 S. E. 397; Baker v. State, 109 Ind. 47, 9 N. E. 711, 718; Hurt v. Haering, 190 Cal. 198, 211 P. 228, 229; Hoag v. Washington-Oregon Corp., 75 Or. 588, 144 P. 574, 147 P. 756, 759; Riddle v. Foreman (Mo. App.) 178 S. W. 227, 228; Felt City Townsite Co. v. Felt Inv. Co., 50 Utah, 364, 167 P. 835, 838; Ft. Wayne I. & S. Co. v. Parsell, 49 Ind. App. 565, 94 N. E. 770, 776; McKee v. Dodd, 152 Cal. 637, 93 P. 854, 855, 14 L. R. A. (N. S.) 780, 125 Am. St. Rep. 82; Barry v. Minahan, 127 Wis. 570, 107 N. W. 488, 490; Bruner v. Martin, 76 Kan. 862, 93 P. 165, 166, 14 L. R. A. (N. S.) 775, 123 Am. St. Rep. 172, 14 Ann. Cas. 39; Mercantile T. & D. Co. v. Roanoke & S. R. Co. (D. C. Va.) 109 F. 3, 8; Dennison v. Payne (C. C. A. 2) 293 F. 333, 343.

In Baltimore S. S. Co. v. Phillips, 274 U. S. 316, at page 321, 47 S. Ct. 600, 602, 71 L. Ed. 1069, the court said:

"A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. The mere multiplication of grounds of negligence alleged as causing the same injury does not result in multiplying the causes of action. 'The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. "The thing, therefore, which in contemplation of law as its cause, becomes a ground for action, is not the group of facts alleged in the declaration, bill, or indictment, but the result of these in a legal wrong, the existence of which, if true, they conclusively evince." ' "

Ownership of the land in controversy was the primary right alleged by Fife. The correlative duty was the obligation of the appellees to respect that ownership and not to trespass upon such land or cloud the title thereto. The delict of appellees was the alleged wrongful invasion of that right by entering such land, removing the natural products thereof, and asserting title thereto under an alleged illegal deed. Manifestly, each of the several separate and distinct grounds, which would render such deed invalid and the occupancy and use of such land by the appellees unlawful, would not constitute separate and distinct causes of action. They are simply the media concludendi or grounds for asserting the right, and they show an invasion by a single legal wrong of a single primary right, and give rise to but one cause of action.

A valid judgment on the merits, rendered by a court of competent jurisdiction in a former suit between the same parties or their privies, operates, in a subsequent suit on the same cause of action, as an estoppel not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other admissible matter which might with propriety have been offered for that purpose. Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 71 L. Ed. 1069; Reynolds v. Schmidt (C. C. A. 10) 40 F.(2d) 238.

The national courts are committed to the doctrine that a judgment or decree upon the merits concludes the parties and their privies as to all the media concludendi or grounds for asserting the right known when the suit was brought. Baltimore S. S. Co. v. Phillips, supra; United States v. Cal. & Ore. Land Co., 192 U. S. 355, 24 S. Ct. 266, 267, 48 L. Ed. 476.

A party seeking to enforce a cause of action must present to the court, either by pleading or proof or both, all the grounds upon which such cause of action is predicated. He is not at liberty to split up his demand and prosecute it by piecemeal or to present a part of the grounds upon which such cause of action is founded and leave the rest to be presented in a subsequent suit if the first fails. Baltimore S. S. Co. v. Phillips, supra; United States v. Land Co., supra; Calaf v. Calaf, 232 U. S. 371, 34 S. Ct. 411, 58 L. Ed. 642; Werlein v. New Orleans, 177 U. S. 390, 20 S. Ct. 682, 44 L. Ed. 817; Magrew v. Magrew (App. D. C.) 38 F.(2d) 541; Conn v. Ringer (C. C. A. 6) 32 F.(2d) 639; Sapulpa Pet. Co. v. McCray (C. C. A. 8) 4 F.(2d) 645, 650; Hickey v. Johnson (C. C. A. 8) 9 F.(2d) 498; Staley v. Espenlaub (D. C. Kan.) 36 F.(2d) 91; Id. (C. C. A. 10) 43 F.(2d) 98; Ledbetter v. Wesley (C. C. A. 8) 23 F.(2d) 81, 86, 88; Shinkle v. Vickery (C. C. Ind.) 117 F. 916; Little v. Smith, 47 Cal. App. 8, 189 P. 1059; State v. Cheney, 67 Wash. 151, 121 P. 48, 50.

In United States v. Cal. & Ore. Land Co., supra, the United States sought to establish its title to certain lands and to have the patents for such lands declared void on the ground that such lands were within an Indian reservation and reserved from the operation of the grant. The Land Company pleaded in bar a final decree adverse to the United States in a former suit brought by the United States to establish its title, and to cancel such patents on the ground that the grant had been forfeited for non-compliance with the conditions of the grant. The court said:

"The best that can be said, * * * to distinguish the two suits, is that now the United States puts forward a new ground for its prayer. Formerly it sought to avoid the patents by way of forfeiture. Now it seeks the same conclusion by a different means,— that is to say, by evidence that the lands originally were excepted from the grant. But in this as in the former suit, it seeks to establish its own title to the fee.

"It may be the law in Scotland that a judgment is not a bar to a second attempt to reach the same result by a different medium concludendi. Phosphate Sewage Co. v. Molleson, 5 Ct. Sess. Cas. 4th Series, 1125, 1139; although in the same case on appeal Lord Blackburn seemed to doubt the proposition if the facts were known before. S. C. L. R. 4 App. Cas. 801, 820. But the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot even split up his claim (Fetter v. Beale, 1 Salk. 11; Trask v. Hartford & N. H. R. Co., 2 Allen [Mass.] 331; Freeman, Judgm. 4th Ed. §§ 238, 241); and, a fortiori, he cannot divide the grounds of recovery."

In Little v. Smith, supra, it was held that the plaintiff, after a judgment had been rendered against him in a suit to set aside a deed on the ground of undue influence and fraud, could not maintain a second action to set aside such deed on the ground of mental incapacity of the grantor.

In State v. Cheney, supra, the court said: "When the court has jurisdiction of a whole subject-matter, a duty rests upon the litigant to so conduct his case as to bring the controversy to a final termination."

The principles, to which we have adverted, are all predicated upon the proposition that there must be an end to litigation concerning a given subject matter.

Counsel for appellants rely upon the general rule that a judgment is not conclusive on any point or question which, from the nature of the case, the form of the action or the character of the pleading could not have been adjudicated in the suit in which such judgment was rendered. 34 C. J. p. 935, § 1339. This rule would undoubtedly apply if the United States had brought the original suit for Fife alone and, in that case, because of the nature of the case, the form of the action or the character of the pleading,

the grounds of relief now urged could not have been set up and adjudicated. It might also apply if the United States had been compelled to set up Fife's cause of action in No. 444 equity or if Fife would have been prejudiced by the failure of the United States to set up his cause of action in that suit. But the action of the United States in setting up Fife's cause of action in No. 444 equity was wholly voluntary. It cannot be doubted that the United States, without injury to Fife, could have brought a separate suit in behalf of Fife alone, of the same kind and nature as the general suit, and therein set up the grounds for relief pleaded in Fife's behalf in No. 444 equity and the grounds of relief pleaded by Fife in the instant case as one single cause of action. The United States was at liberty to bring any form of action or seek any remedy open to Fife, but it was not entitled, in a general suit in behalf of Fife and others, to set up one ground for Fife's cause of action and when that general suit, so far as Fife was concerned, resulted in an adverse decree, to later, in a separate suit in behalf of Fife, set up another ground for the same cause of action. By prosecuting No. 444 equity to final judgment, the United States waived all grounds for Fife's cause of action which it did not set up therein.

We conclude, therefore, that the exception relied upon by counsel for the appellants is not applicable here.

■ Counsel for appellants say that an incompetent Indian cannot create an estoppel by his act or omission. This is contrary to the holdings of this court in Fulsom v. Quaker Oil & Gas Co. (C. C. A. 10) 35 F.(2d) 84, and Mars v. McDougal, 40 F.(2d) 247, certiorari denied October 13, 1930, 51 S. Ct. 28, 75 L. Ed. ——. Furthermore, such proposition has no application here, since the estoppel arises from the act or omission of the United States in its representative capacity, as the guardian of the Indian.

■ It is well settled that a decree against the United States, in a suit prosecuted by the United States in behalf of a restricted Indian, is a bar to a subsequent suit on the same cause of action brought by such Indian. Heckman v. United States, 224 U. S. 413, 32

S. Ct. 424, 56 L. Ed. 820; Hickey v. Johnson, supra; Ledbetter v. Wesley, supra; Winship v. Ricketts (C. C. A. 8) 32 F.(2d) 476.

In Heckman v. United States, supra, at page 445 of 224 U. S., 32 S. Ct. 424, 434, the court said:

"But if the United States, representing the owners of restricted lands, is entitled to bring a suit of this character, it must follow that the decree will bind not only the United States, but the Indians whom it represents in the litigation. This consequence is involved in the representation.  *   *   *

"In what cases the United States will undertake to represent Indian owners of restricted lands in suits of this sort is left, under the acts of Congress, to the discretion of the Executive Department. The allottee may be permitted to bring his own action, or, if so brought, the United States may aid him in its conduct.  *   *   * And, as already noted, the act of May 27, 1908, makes provision for proceedings by the representatives of the Secretary of the Interior in the name of the allottee. But in the opportunities thus afforded there is no room for the vexation of repeated litigation of the same controversy. And when the United States itself undertakes to represent the allottees of lands under restriction, and brings suit to cancel prohibited transfers, such action necessarily precludes the prosecution by the allottees of any other suit for a similar purpose, relating to the same property."

■ Finally, counsel for appellants contend that, under the provisions of the Curtis Act, approved June 28, 1898, 30 Stat. 495, the mineral estate was severed from the surface estate in the Seminole lands and that allottees of lands under the Seminole agreement, approved July 1, 1898, 30 Stat. 567, first acquired the mineral estate in such lands on July 1, 1908, by virtue of the provisions of section 11 of the Act of May 27, 1908, 35 Stat. 312, 316. Substantially the same proposition was presented to this court in the recent case of Moore v. Carter Oil Co., 43 F.(2d) 322, and decided contrary to appellants' contentions.

The decree appealed from is affirmed.