**BROOKS et al. v. ARKANSAS–LOUISIANA PIPE LINE CO.**

No. 10043.

Circuit Court of Appeals, Eighth Circuit.

May 4, 1935.

Rehearing Denied June 10, 1935.

J. B. Ward, of Russellville, Ark., and Fred A. Isgrig, of Little Rock, Ark. (Bob Ragsdale, of Russellville, Ark., and Sam Rorex and John S. Gatewood, both of Little Rock, Ark., on the brief), for appellants.

Jesse Reynolds, of Clarksville, Ark. (F. H. Bacon and W. H. Arnold, Jr., both of Shreveport, La., on the brief), for appellee.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken from a decree dismissing a second suit in equity brought by Brooks and McFadden as plaintiffs against the Arkansas-Louisiana Pipe Line Company.

It appears that the pipe line company is the owner by assignment of an oil and gas lease executed by the plaintiffs upon their

264 acres of land in Pope county, Ark., and that while engaged in explorations under that lease it struck a large flow of gas in one of the wells on the plaintiffs' land. The gas well is some six or eight miles from the pipe line, and could only be connected by the expenditure of a large sum of money. The company deems the territory insufficiently proven to justify the connection and has capped the well, and has paid the plaintiffs not to exceed $200 per year on account of the production, as provided in the lease. The plaintiffs have felt aggrieved because the discovery of the gas on their land has brought them only nominal return.

In the first equity suit which they brought against the pipe line company, they did not set up as a cause of action that the pipe line company had breached the terms of the oil and gas lease as the lease was written. It has at all times been apparent that the pipe line company has meticulously conformed to the terms of the writing, but they alleged that the pipe line company had, for valuable consideration, made an agreement with them that the terms of the lease should be changed so that the lessee would be obligated to pay "one-eighth of the value of the gas at the well" instead of $200.-00 per year per well." (Where an oil and gas lease calls for the payment of a proportionate share of the production of gas there may be obligations upon the lessee in the absence of express provision to the contrary in the matter of drawing out and marketing the gas and accounting to the lessor for his share which do not arise under a lease calling for the payment of a fixed sum for each gas well. Smith v. McGill (C. C. A. 8) 12 F.(2d) 32, 34; Brewster v. Lanyon Zinc Co. (C. C. A.) 140 F. 801; Union Gas & Oil Co. v. Adkins (C. C. A.) 278 F. 854. In the original complaint the allegations were that the agreement to change the written lease was oral and no reference was made to any written memorandum concerning the same. The pipe line company appeared in response to the complaint and moved to dismiss the same on the general ground that it did not state facts sufficient to constitute a cause of action and on the special ground that the matter alleged in the said complaint "is a verbal contract to change the material parts of a lease. The same is within the Statute of Frauds (Crawford & Moses' Dig. Ark. § 4862) and is void." The trial court sustained the motion with leave to the plain-

tiffs to amend their complaint. The plaintiffs thereupon amended their complaint and alleged "that a memorandum was made of said agreement and reduced to writing"; a copy being attached to the petition. The pipe line company renewed its motion to dismiss on the same grounds, and the trial court again sustained the motion, and dismissed the suit with costs.

The plaintiffs' prayer in their first suit (omitting a matter discussed later), was that the pipe line company be required to specifically perform the terms and covenants of the original lease as amended by the agreement and that the court in its decree should provide for a settlement with the plaintiffs for their royalty on the basis of one-eighth of the gas produced from the land. The memorandum referred to in the complaint, omitting descriptions, was as follows:

"Receipt.

"Whereas, the undersigned executed a certain oil and gas lease, dated September 27, 1927, to D. W. Johnston, * * * which lease is now held by the Arkansas-Louisiana Pipe Line Company.

"Whereas, the undersigned have questioned the validity of the said lease.

"Now, Therefore, in consideration of Seven Hundred Fifty and no/100 ($750.00) Dollars cash in hand, received from the Arkansas-Louisiana Pipe Line Company, we hereby agree that if the lessee will at any time in the future change the gas royalty provision to read 'One-eighth (⅛) of the value of the gas at the well * * *' instead of 'Two Hundred ($200.00) Dollars per year per well, * * *' we will ratify and confirm said lease in all things, regardless of whether a lawsuit for cancellation and/or damages has been brought or not.

"This receipt and agreement is a part of and predicated upon a certain oral agreement made this day between undersigned and the Arkansas-Louisiana Pipe Line Company in regard to developments of the leasehold, and a modification of the gas royalty provisions of said lease.

> "W. C. Brooks,
> "Ruth Autry Brooks,
> "J. G. McFadden,
> "Johnnie McFadden.

"Attest:
> "Bob Ragsdale,
> "Orval Childress."

It will be noted that the writing is not signed by the defendant pipe line company, and that the writing contains no promise on

the part of the pipe line company to pay a percentage royalty. The language is: "We agree that if the lessee will at any time in the future change the gas royalty provision * * * we will ratify and confirm said lease in all things. * * *"

Within two weeks after the first suit was dismissed, the plaintiffs brought this second suit in equity against the pipe line company.

They alleged that the oil and gas lease had been obtained from them by fraud and misrepresentations and that it had been signed by the plaintiffs in ignorance of its true import in exclusive reliance upon false representations made to them by the original lessee as to its contents; that they had been about to sue for cancellation, but that the pipe line company had prevented the suit and the cancellation by making the agreement to pay royalty on the gas produced and to make exploration and development. In this connection they alleged the agreement by the pipe line company to pay royalty for gas, substantially as in their first suit, attaching a copy of the same memorandum in writing. They alleged further that by reason of the failure of the pipe line company to carry out the agreement the consideration for forbearing to sue for cancellation of the lease had failed. Accordingly, the plaintiffs, instead of praying for specific performance as in their first suit, prayed for cancellation of the lease and for injunction against further trespass by the defendant, and for damages. They also prayed in the alternative that if cancellation should be denied that the lease should be reformed to provide for the payment of one-eighth of all gas produced from said land as royalty, and otherwise to conform to the alleged agreement.

The pipe line company denied that there were any just grounds for cancelling the oil and gas lease and alleged matters of estoppel. Its answer also incorporated a motion to dismiss the complaint in so far as it was based on the alleged agreement to change the lease, charging that such agreement was void under the statute of frauds, and that it had been so adjudicated in the first suit.

A trial was had and the court found that the evidence was insufficient to establish that a contract had been made changing the terms of the lease; that the alleged contract was verbal and within the statute of frauds, and void, and that the defendant's plea of res adjudicata should be sustained.

In this appeal the correctness of each of these findings and conclusions is challenged.

With respect to the assignment that the court erred in sustaining the plea of res adjudicata, the rule announced in Southern Pacific R. Co. v. United States, 168 U. S. 1, 18 S. Ct. 18, 27, 42 L. Ed. 355, has long been settled doctrine on the subject. The court said: "The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination." Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Larsen v. Northland Transp. Co., 292 U. S. 20, 54 S. Ct. 584, 78 L. Ed. 1096; United States v. Moser, 266 U. S. 236, 45 S. Ct. 66, 69 L. Ed. 262; State of Oklahoma v. Texas, 256 U. S. 70, 41 S. Ct. 420, 65 L. Ed. 831; Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 602, 71 L. Ed. 1069; Tait v. Western Md. R. Co., 289 U. S. 620, 53 S. Ct. 706, 77 L. Ed. 1405; Simonds v. Norwich Union Indemnity Co. (C. C. A. 8) 73 F.(2d) 412; Continental Nat. Bank v. Holland Banking Co. (C. C. A. 8) 66 F. (2d) 823, 829; Southern Pac. Co. v. Van Hoosear (C. C. A. 9) 72 F.(2d) 903; Divide Creek Irr. Dist. v. Hollingsworth (C. C. A. 10) 72 F.(2d) 859, 96 A. L. R. 937; Donald v. J. J. White Lumber Co. (C. C. A. 5) 68 F.(2d) 441; Warner v. Tenn. Products Corp. (C. C. A. 6) 57 F.(2d) 642; Strother v. Commissioner (C. C. A. 4) 55 F.(2d) 626; Kelliher v. Stone & Webster (C. C. A. 5) 75 F.(2d) 331; Reynolds v. Schmidt (C. C. A. 10) 40 F.(2d) 238; George H. Lee Co. v. U. S. (C. C. A. 9) 41 F.(2d) 460; Rancourt v. Panco Rubber Co. (C. C. A. 1) 46 F.(2d) 625; Hines v. Welch, 57 App. D. C. 371, 23 F.(2d) 979.

In the application of this rule it must be considered whether the subsequent suit between the same parties is upon the same

**or** a different cause of action. Although the facts alleged in this case are the same as in the first suit, the causes of action are not identical. "A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show." Baltimore S. S. Co. v. Phillips, supra; Vinson v. Graham (C. C. A. 10) 44 F.(2d) 772, 774. The same facts may manifest the violation of separate and distinct legal rights, each giving rise to a separate cause of action.

The plaintiffs in the first suit prayed for the specific performance of the terms of the lease as they alleged it to have been amended or modified by a subsequent parol agreement. Obviously they sought the enforcement of a legal right different from their present suit for cancellation of the lease and damages, although both suits arise out of the same facts. The two causes of action not being identical, it might still be argued that the judgment in the first suit would not necessarily be a bar to granting the relief sought in the second suit.

But even though the second suit is based upon a different cause of action, to the extent that it presents a right, question, or fact which has been once determined as between the same parties, the same must be taken as conclusively established, even though the determination was based upon an erroneous view or was arrived at by an erroneous application of the law. United States v. Moser, supra; North Carolina R. Co. v. Story, 268 U. S. 288, 45 S. Ct. 531, 69 L. Ed. 959; Chicago, R. I. & P. R. Co. v. Schendel, 270 U. S. 611, 617, 46 S. Ct. 420, 70 L. Ed. 757, 53 A. L. R. 1265; Reed v. Allen, 286 U. S. 191, 52 S. Ct. 532, 76 L. Ed. 1054, 81 A. L. R. 703; Sacks v. Stecker (C. C. A. 2) 62 F.(2d) 65, 67; Vinson v. Graham, supra.

Comparison between the record of the first suit and the present suit leaves no room for doubt that the alleged agreement to change the written lease set up in the first suit is exactly the same agreement depended upon in this case. The motion to dismiss in the first suit presented the defendant's claim that the alleged agreement to change the written lease was oral and that it was void under the statute of frauds. It was upon the ruling on that motion that the judgment of dismissal was entered.

■ It is well settled that a judgment upon demurrer or upon motion to dismiss is as conclusive upon the parties as a judgment rendered upon proof. Northern Pac. R. Co. v. Slaght, 205 U. S. 122, 27 S. Ct. 442, 51 L. Ed. 738; Divide Creek Irr. Dist. v. Hollingsworth, supra; Sacks v. Stecker, supra; Woodard v. Outland (C. C. A. 8) 37 F.(2d) 87; Ledbetter v. Wesley (C. C. A. 8) 23 F.(2d) 81; Passailaigue v. Herron (C. C. A. 5) 38 F.(2d) 775; Old Dominion Copper Mining & Smelting Co. v. Lewisohn (C. C. A. 2) 202 F. 178.

■ Of course it must appear that the judgment set up as an estoppel was rendered upon the merits of the case. United States v. Moser, supra; Swift v. McPherson, 232 U. S. 51, 34 S. Ct. 239, 58 L. Ed. 499; Woodard v. Outland, supra; Ledbetter v. Wesley, supra.

■ In this respect it has frequently been held that a judgment or decree sustaining a demurrer or motion to dismiss, without the reservation of any issue, is presumed to be upon the merits, unless the contrary appears of record or is stated in the decree. By such judgment or decree the issues become res adjudicata. Vinson v. Graham, supra; Ledbetter v. Wesley, supra; Hickey v. Johnson (C. C. A. 8) 9 F.(2d) 498, 501; Indian Land & Trust Co. v. Shoenfelt (C. C. A. 8) 135 F. 484; Fowler v. Osgood (C. C. A. 8) 141 F. 20, 4 L. R. A. (N. S.) 824; Baker v. Cummings, 181 U. S. 117, 21 S. Ct. 578, 45 L. Ed. 776.

In Hickey v. Johnson, supra, there was included in the demurrer a defense to the merits and this court said:

"It is conceded that in equity cause No. 444 a demurrer was interposed and sustained, and the cause dismissed generally, without specifying the ground upon which that action was taken, and without preserving further rights of action to the complainant. * * *

"'A general judgment or decree of dismissal, without more, renders all the issues in the case res adjudicata, and constitutes a bar to any subsequent suit for the same cause of action. Hence, when a court dismisses a suit upon some ground which does not go to the merits of the cause of action, but leaves them open to consideration in another court, or at another time, or in another way, the decree of dismissal must expressly adjudge that it is rendered for the specific reason upon which it is based, or must expressly provide that it is made without prejudice.' Fowler v. Osgood, 72 C. C. A. 276, 280, 141 F. 20-24, 4 L. R. A. (N. S.) 824."

In Vinson v. Graham, supra, it was stated: "The order of dismissal was without reservation and contained no recitation of the grounds upon which the demurrer was sustained. Therefore, it must be considered as an order dismissing the bill upon the merits, as to Smith and the deed of March 17, 1906. Hickey v. Johnson (C. C. A. 8) 9 F.(2d) 498."

It is quite evident that when the plaintiffs amended their petition in the first suit by setting up the memorandum evidencing the oral agreement they did so in an attempt to meet the plea of the statute of frauds. Upon subsequent hearing upon motion to dismiss in which the same grounds were renewed, the issue of the statute of frauds was sharply drawn to the court's attention. It was a defense going to the merits of the plaintiffs' case. The order sustaining the motion and dismissing the case was general and without reservation of any issue. Accordingly, it must be considered as an order dismissing the bill upon the merits and a final determination of the issue presented by the plea of the statute of frauds.

In Sacks v. Stecker, supra, the Court of Appeals of the Second Circuit had before it a situation closely analogous to the one presented here. The plaintiffs filed suit in the state equity court to recover a commission for procuring the sale of certain real estate. The defendant interposed a motion to dismiss which incorporated as a special defense that "the complaint be dismissed for failure to show compliance with the statute of frauds." In granting the motion to dismiss, the decree simply recited that the bill of complaint "discloses no cause of action." It was held that the decree was a judgment upon the merits of the defendant's plea of the statute of frauds, and res adjudicata of that issue in a subsequent action at law in the federal court to recover upon the same claim. The principle of the decision is applicable here. The judgment of the District Court in the first suit that the alleged agreement to change the written lease was void under the statute of frauds worked an estoppel to further litigation of the question between the same parties, and justifies the conclusion of the trial court that the matter was res adjudicata when set up in the second suit.

We do not rule that the view taken by the trial court on the plea of the statute of frauds was correct. On the contrary, it would seem that in Arkansas the general rule that a contract which the statute of frauds requires to be in writing cannot be contradicted, modified, or altered orally (Arkmo Lumber Co. v. Cantrell, 159 Ark. 445, 252 S. W. 901) is subject to the exception that an agreement for a substituted method of performing the contract may be proven by parol. Valley Planing Mill Co. v. Lena Lumber Co., 168 Ark. 1133, 272 S. W. 860. See, also, Bemis Bros. Bag Co. v. Nesbitt, 183 Minn. 577, 237 N. W. 586, 587; Binder v. Blair, 48 Idaho, 580, 283 P. 613. In Nonamaker v. Amos, 73 Ohio St. 163, 76 N. E. 949, 4 L. R. A. (N. S.) 980, 112 Am. St. Rep. 708, 4 Ann. Cas. 170, a parol amendment to an oil and gas lease similar to the agreement alleged in this case was sustained under analogous statutes and decisions.

On the trial of the second suit, the court considered the testimony adduced and decided the issues upon the merits, and we have considered plaintiffs' assignment against the finding on the evidence.

There is no evidence to show that the plaintiffs had executed the lease either through fraud in its inducement or inception, or through a mistaken belief as to its contents or legal effect. Nor is the lease shown to be unconscionable or even unusual. The plaintiffs have claimed that the defendant failed to diligently develop the tract for gas and oil. But the lease reserved to the lessee the right to determine "the location of wells and the strata to which wells may be drilled" and "the extent of operations and all matters incident thereto" in the exercise of its business judgment. Upon obtaining an assignment of the lease, the defendant entered upon the land and began the drilling which resulted in striking the highly productive gas well. Within the next year the defendant began sinking a deep test well for oil upon the premises, and, in addition, it drilled at least three other wells within the same year on adjoining leaseholds in a systematic exploration of the Tait Island Field. There is no ground for the plaintiffs' contention that there was an implied obligation upon the pipe line company to connect the well with the pipe line. It is expressly provided in the lease that there shall be "no implied covenants binding upon the lessee or lessor." The nature of the field, and the cost of piping the gas and adjusting the pressure rendered it problematical whether the outlay necessary to market the product

was warranted without further exploration confirming its future.

There is no evidence that the parties contemplated any change in the provision of the lease that there should be no implied covenants binding upon the lessee or the lessor, or in the provision which reserves to the lessee the right to develop the tract in the exercise of its business judgment.

It is quite apparent that the company was developing the land in good faith, with reasonable diligence, and in accord with its rights under the lease.

The claim of the plaintiffs that there was an agreement to change the written terms of the lease concerning the payment of one-eighth royalty for gas rests upon the testimony given concerning a conference held in Shreveport, La., in 1930, between the attorney for the pipe line company and the plaintiffs and their attorney. There is no question but that an amendment to the lease which would secure to the plaintiffs a royalty of one-eighth of the gas produced was discussed. But there is direct conflict as to whether anything further or more definite was agreed upon than is stated in the memorandum written by the plaintiffs' attorney at the time, and set forth, supra. We think the finding of the trial court, "that the testimony was not sufficient to show that a contract was made in 1930 changing the terms of the lease," is sustained by the evidence.

In their first suit as well as in this suit, the plaintiffs alleged that the pipe line company had agreed in the conference at Shreveport in 1930 that it would sink a deep test well for oil upon the plaintiffs' lands to a depth of 4,500 feet. Part of the relief prayed for in the first suit was that the pipe line company "be required to make said deep test well for oil as agreed." In this suit, as the relief asked was cancellation of the lease, no equitable relief was asked concerning the failure to sink a well to the depth of 4,500 feet except as alleged nondevelopment was claimed to justify the cancellation prayed for.

The evidence is that at the time the plaintiffs began their litigation against the pipe line company it was actively engaged in sinking a deep well upon their lands and reached a depth of 4,375 feet at a cost, as stated in the pleadings, of $70,000. But when the suit was filed and the lessee's rights under the lease were put in issue, it is evident that the company was not obliged to continue to make expenditure of the large sums of money required for exploration until the questions could be judicially determined. Hamilton v. Empire Gas & Fuel Co. (C. C. A.) 297 F. 422; Goodwin v. Standard Oil Co. (C. C. A. 8) 290 F. 92.

It is clear that whether the pipe line company ever agreed to sink a well to the depth of 4,500 feet on the plaintiffs' lands or not (a matter in sharp dispute) would have no bearing on the present suit for cancellation of the lease. There is no claim that any such agreement was to be incorporated in the lease.

We do not find any evidence to justify any reformation of the lease as prayed for, in the alternative, in the plaintiffs' second petition.

It is apparent that the real object of the plaintiffs' suits against the pipe line company has been to compel the pipe line company to connect the gas well, market the gas, and pay royalty. The computation of damages offered was on the basis of the estimated quantity of gas that would have been taken out, and the attorney for the plaintiffs testified: "All they (the Pipe Line Company) would have had to have done would have been to put that well on the pipe line and give us one-eighth, that is all the controversy there was about."

But we are satisfied that the plaintiffs have had no cause of action against the pipe line company for its refusal to connect the gas well with the pipe line and market the gas therefrom up to the present time and that their suit was rightly dismissed.

Affirmed.